Death Opinion














IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,294






FRANK MARTINEZ GARCIA, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM BEXAR COUNTY






 Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., and Meyers,
Price, Womack, Johnson, Keasler, and Cochran, JJ., joined. Hervey, J., did not
participate.



O P I N I O N




 Appellant was found guilty of murdering a police officer and sentenced to death. See Tex. Pen.
Code § 19.03(a)(1). On direct appeal to this Court, he raises seven points of error. We affirm the
judgment of the trial court. 

 In his first point of error, appellant argues the trial court abused its discretion when it overruled his
objection to the prosecutor's comment on his right to remain silent, in violation of his right under the Fifth
Amendment to the United States Constitution. Appellant points to the following exchange during the
prosecutor's opening statement at the guilt/innocence phase:

 [Prosecutor]: Does that stop him? No. He goes back inside. This time he
retrieves an assault weapon. And he will tell you he did that in his statement. And he will
tell you that he went back outside to shoot again with that assault weapon. But he's not
going to tell you something very important in that statement, but we are going to prove it
to you and the evidence is going to show you - 


 [Defense counsel]: Excuse me. That's a comment on the right of the defendant to
remain silent, and I object to that.


 The Court: Overruled.


Appellant claims the prosecutor's comments faulted him for exercising his right to remain silent "during the
time his statement [was] taken" by focusing the jury's attention on the fact that he failed to mention in his
statement that he shot the victim a second time with a high velocity rifle.

 The record reflects that appellant waived his post-arrest right to silence when he agreed to give a
written statement to police after being warned of his constitutional rights. Appellant does not claim his
waiver was involuntary. Thus, appellant's complaint about his right to remain silent "during the time his
statement was made" is nonsensical. Moreover, when a defendant makes a statement which is admitted
into evidence, the State's reference to the statement and comparison between the statement and the other
evidence collected is not a comment on the defendant's failure to testify or his right to remain silent. In
Lopez v. State, 339 S.W.2d 906, 910 (Tex. Crim. App. 1960), for example, the defendant complained
that the prosecutor made a reference during opening argument to the defendant's failure to testify when the
prosecutor stated, "Now this defendant has not told you all that happened on top of that hill, we know
that...." The prosecutor made the comment while reviewing the contents of the defendant's written
statement, which was in evidence before the jury. We held that the prosecutor was clearly referring to the
defendant's written statement, which was in evidence, and not to his failure to testify. Id. at 910-11. 

 We discern no abuse of discretion on the part of the trial court in overruling appellant's objection
to the prosecutor's comments. Point of error one is overruled.

 In point of error two, appellant claims the trial court abused its discretion when it overruled his
objection to the prosecutor's comment on his right to remain silent. Appellant points to the following
statement by the prosecutor during closing argument at the guilt/innocence phase: "[Appellant's] relatives
call in and say 'Frankie is killing everybody - Frankie is killing everybody.' And you notice I predicted,
and I'm right - no reaction, no conscience, no regret." Appellant argues that the reference to his lack of
remorse was a comment on his failure to testify.

 A comment by the prosecutor on a defendant's failure to show remorse can sometimes be a
comment on his failure to testify. However, when such prosecutorial comments are supported by testimony
presented to the jury during the trial, they are considered a proper summation of the evidence. Davis v.
State, 782 S.W.2d 211, 222-223 (Tex.Crim.App. 1989), cert. denied, 495 U.S. 940 (1990); see also
Caldwell v. State, 818 S.W.2d 790, 800 (Tex. Crim. App. 1991)(holding comment on defendant's lack
of remorse was proper argument in light of evidence from various sources supporting it), cert. denied, 503
U.S. 990 (1992), overruled on other grounds, Castillo v. State, 913 S.W.2d 529, 534 (Tex. Crim.
App. 1995). 

 The evidence adduced at trial showed that appellant, after shooting Jessica Garcia (his wife) and
the police officer who was called to the scene, ran out of his home shooting at the relatives who had come
to help Jessica move out. He pursued one man and shot him in the leg. In his written statement, appellant
stated that he continued firing until he ran out of ammunition. Appellant returned to the house, retrieved
another gun and fired at the downed officer again, this time in the head. An officer who arrived on the
scene described appellant as "cocky" when arrested. Another officer who took appellant's statement
testified that he was "very calm, very matter-of-fact" during his interview. The officer further described
appellant's attitude as "very nonchalant, very laid back and calm . . . There were several things that had
a tone of arrogance to it." In light of the evidence of appellant's lack of conscience and remorse, we
discern no abuse of discretion on the part of the trial court in overruling appellant's objection to the
prosecutor's statements. Point of error two is overruled.

 In point of error three, appellant claims the trial court abused its discretion in failing to instruct the
jury to disregard the prosecutor's attack on the personal morals and trustworthiness of defense counsel. 
Appellant complains of the following statement made by the prosecutor during summation at the
guilt/innocence phase:

 And [defense counsel is] going to come here, and he's going to put himself before twelve
citizens of this community and he's going to argue that hogwash that you've heard.


Appellant's objection was sustained, but the trial court denied his request to instruct the jury to disregard
the prosecutor's comment.

 The prosecutor's comment was plainly directed at defense counsel's theories and arguments in the
case. By telling the jury that defense counsel's arguments were "hogwash," i.e., nonsense, the prosecutor
was merely stating, in colorful language, his opinion regarding the merits of defense counsel's arguments. 
See Penry v. State, 903 S.W.2d 715, 756 (Tex. Crim. App.)(stating that prosecutor may argue his
opinions about the case so long as his opinions are based on evidence), cert. denied, 516 U.S. 977
(1995). Such argument does not warrant a reversal for attacking the personal morals and integrity of
defense counsel. Point of error three is overruled.

 In point of error four, appellant claims the trial court erred, at the punishment phase, when it
admitted inadmissible "hearsay within hearsay" evidence to the effect that he assaulted his wife on
December 15, 1994. (1) At the punishment phase, the State offered business records from the Bexar County
Battered Women's Shelter through its custodian of records, Joyce Coleman, and the trial court admitted
those records under Rule of Evidence 803(6), the business records exception to the hearsay rule. Coleman
testified that the records were kept in the regular course of business and were created by an employee of
the shelter. The records reflect that, on December 16, 1994, appellant's wife reported to the employee
that she had been physically and psychologically abused by appellant. Appellant's claim is correct. Jessica
Garcia's out-of-court statements to an employee at the Battered Women's Shelter did not lose their
hearsay status simply because the employee had a business duty to accurately record what she said. Rule of Evidence 803(6) provides that "records of regularly conducted activity" may be admitted
as an exception to the hearsay rule, even if the declarant is available to testify. Such records include:

 A memorandum, report, record, or data compilation, in any form, of acts, events,
conditions, opinions, or diagnoses, made at or near the time by, or from information
transmitted by, a person with knowledge, if kept in the course of a regularly conducted
business activity to make the memorandum, report, record, or data compilation, all as
shown by the testimony of the custodian or other qualified witness, or by affidavit that
complies with Rule 902(10), unless the source of information or the method or
circumstances of preparation indicate lack of trustworthiness. 'Business' as used in this
paragraph includes any and every kind of regular organized activity whether conducted for
profit or not.


Coleman testified that she was the legal custodian of the business records in question, that the records were
kept in the regular course of business, and that the information contained in the records was recorded by
an employee of the shelter at or near the time of the stated events.

 The State laid a proper foundation for admission of the shelter's business records under Rule
803(6). The records themselves were admissible, but that does not mean that all information, from
whatever source or of whatever reliability, contained within those business records is necessarily
admissible. (2) When a business receives information from a person who is outside the business and who has
no business duty to report or to report accurately, those statements are not covered by the business records
exception. (3) Those statements must independently qualify for admission under their own hearsay exception
- such as statements made for medical diagnosis or treatment, (4) statements concerning a present sense
impression, (5) an excited utterance, (6) or an admission by a party opponent. (7)

 The State argues that Jessica's oral statements concerning appellant's physical and psychological
abuse made to the shelter employee were themselves admissible under Rule 803(4) as statements made
for purposes of medical diagnosis or treatment. But they were not. There is no evidence that Jessica
Garcia went to the shelter to seek medical treatment, nor is there any evidence that the shelter provided
either medical diagnosis or treatment. The State points to testimony that the shelter will provide assistance
to any battered woman who asks for help and will supply medical attention, including mental health
treatment. Indeed, that may be true, but there is still no evidence that Jessica was specifically seeking
medical treatment when she spoke to the shelter employee. (8) Thus, we conclude that the trial court erred
in admitting Jessica's out-of-court oral statements that were transcribed into the otherwise admissible
business records of the Bexar County Battered Women's Shelter.

 Having determined that the trial court erred in admitting these statements, we must determine next
whether the error requires reversal. Texas Rule of Appellate Procedure 44.2(b) provides that an appellate
court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial
rights." Under that rule, an appellate court may not reverse for non-constitutional error if the court, after
examining the record as a whole, has fair assurance that the error did not have a substantial and injurious
effect or influence in determining the jury's verdict. Johnson v. State, 967 S.W.2d 410, 417
(Tex.Crim.App. 1998); King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). (9)

 After examining the record of appellant's trial as a whole, we do have fair assurance that the error
in question did not have a substantial and injurious effect or influence in determining the jury's verdict at the
punishment phase. Our conclusion is based on two fundamental facts. First, there was a considerable
amount of other evidence from which the jury could have concluded that appellant had been abusive
toward his wife, Jessica. (10) Second, there was more than ample evidence to support the jury's affirmative
answer to the special issue concerning appellant's future dangerousness. (11) Point of error four is overruled.

 In his fifth point of error, appellant claims the trial court erred, at the punishment phase, in admitting
"irrelevant abstract proof" of criminal activities carried out by the "Angels of Sin" street gang in San Antonio
in 1992. Appellant argues that the evidence of the gang's activities was irrelevant and inadmissible because
there was insufficient evidence to connect him to the gang.

 At the punishment phase of a capital murder trial, evidence of a defendant's character, good or
bad, is relevant to the special issues. Jones v. State, 944 S.W.2d 642, 652 (Tex.Crim.App. 1996), cert.
denied, 522 U.S. 132 (1997). Evidence of gang membership is relevant to show a defendant's bad
character if the State can prove (1) the gang's violent and illegal activities and (2) the defendant's
membership in the gang. Mason v. State, 905 S.W.2d 570, 577 (Tex.Crim.App. 1995), cert. denied,
516 U.S. 1051 (1996). Here, San Antonio Police Officer John Schiller testified in relevant part that
appellant was arrested in 1992 for writing gang graffiti and that, in a post-arrest interview, appellant
admitted being an "Angel of Sin" gang member. This testimony was clearly sufficient to establish
appellant's membership in the gang. Point of error five is overruled.

 In point of error six, appellant claims the trial court abused its discretion at the guilt/innocence stage
of trial by allowing the State to present victim impact evidence in the form of the medical records of a
wounded adult bystander, John Luna. Luna was among the relatives who went to appellant's house on the
morning of the offense to help his wife, Jessica, move out. After shooting Jessica and a police officer inside
the house, appellant emerged from the house still shooting. Luna fled but was shot in the leg. Luna's
medical records were admitted into evidence. The records reflected that Luna was taken by ambulance
to a hospital, where he received treatment for his leg wound and a shoulder wound. He was discharged
from the hospital on the second day. The records state that Luna was calm and in good spirits during his
stay. There was some swelling of the wounded leg and drainage from the wound. On his discharge, Luna
was instructed to change his bandages twice each day and to continue taking the prescribed pain
medication every four to six hours as needed. Appellant claims these records were "irrelevant victim
impact" evidence and should not have been admitted.

 In Mathis v. State, 67 S.W.3d 918, 928 (Tex.Crim.App. 2002), we stated that "victim impact
evidence" is "generally recognized as evidence concerning the effect that the victim's death will have on
others, particularly the victim's family members." Appellant mischaracterizes Luna's medical records as
victim impact evidence. The records did not reveal anything about Luna's good character or how third
persons were affected by the death of the victim named in the indictment (the police officer). The records
reflected in the most technical terms Luna's medical condition while in the hospital. While the records might
have been irrelevant or inadmissible for other reasons, they were not irrelevant or inadmissible because they
were victim impact evidence, as appellant claims. See id. The trial court did not abuse its discretion in
overruling appellant's objection to the records on those grounds. Point of error six is overruled.

 In his seventh point of error, appellant claims the death penalty is cruel and unusual punishment in
violation of the Eighth Amendment. He wants his sentence reformed to imprisonment for life. The death
penalty does not, however, violate the Eighth Amendment. Jurek v. Texas, 428 U.S. 262 (1976);
Canales v. State, 98 S.W.3d 690, 700 (Tex.Crim.App. 2003). Point of error seven is overruled.

 We affirm the judgment of the trial court.


DELIVERED JANUARY 21, 2004

PUBLISH
1. On appeal, appellant claims that this evidence violated his Sixth Amendment right of confrontation,
but at trial his first objection was:


 Your Honor, these records, the Defense's objection to them are that one, they are
hearsay; two, that they're hearsay within hearsay, because you have either Ms. Colunga
or Ms. Ramirez writing down this information from yet another person. So, you have
hearsay within hearsay. 


Appellant also objected to the records as: 1) being "substantially more prejudicial than any probative value
that they may have"; 2) extraneous acts under Rule 404(b); 3) improper character evidence; 4) confusing
and misleading; 5) a violation of due process, right of confrontation and right to a fair trial under the Fifth
and Fourteenth Amendments to the U.S. Constitution. The only objection that is sufficiently specific under
Tex. R. Evid. 103(a) is that the statements quoted within the business records are themselves hearsay. 
Furthermore, if the evidence were admissible under Rule 803(6), it would be admissible even over a
Confrontation Clause objection, because the business record exception is a "firmly rooted" hearsay
exception. Idaho v. Wright, 497 U.S. 805, 815 (1990). 
2. For example, a delusional person might call Crimestoppers to report that George Washington
was cutting down a cherry tree on the Capitol grounds. Although Crimestoppers has a business duty to
accurately record all incoming calls and to keep the records as part of its business records, the caller had
no business duty to report accurately. His statements may be contained within a business record, but they
are not admissible to establish the fact that George Washington was, in fact, cutting down a cherry tree,
although they would be admissible to establish that the person did call and make a report of some type on
a given day. See Crane v. State, 786 S.W.2d 338, 353-54 n.5 (Tex. Crim. App. 1990) (sheriff's
department's tape recordings of defendant's telephone calls from jail to family members did not qualify for
admission under Rule 803(6) because defendant had no business duty to make the statements, he was
aware that he was being recorded, and such statements were "self-serving" hearsay which lacked
"fundamental trustworthiness").
3. See generally 4 C. Mueller & L. Kirkpatrick, Federal Evidence § 449 at 526-32 (2d ed. 1994)
(hereafter "Mueller & Kirkpatrick") (discussing information from sources outside business and its
admissibility under Fed. R. Evid. 803(6); noting that "[i]f both the source and recorder act in regular course,
and everyone in the chain of transmission does likewise, the message of FRE 803(6) is that the fact of
layered hearsay does not matter. ... If the people in the chain of transmission are not acting in normal
course, the exception does not apply and the record is likely to be excluded. If the source of information
is an outsider to the business, the exception alone is not enough and the record can be admitted only if what
the source said is itself within an exception.").
4. Tex. R. Evid. 803(4).
5. Tex. R. Evid. 803(1).
6. Tex. R. Evid. 803(2).
7. Tex. R. Evid. 801(e)(2)(A).
8. See Mueller & Kirkpatrick, supra, § 442 at 455-56.
9. Our holdings in Johnson and King sprang from Kotteakos v. United States, 328 U.S. 750,
764-765 (1946), in which the United States Supreme Court expounded upon the meaning of the federal "substantial rights" harmless error test:


 If, when all is said and done, the conviction is sure that the error did not influence
the jury, or had but a slight effect, the verdict and the judgment should stand.... But if one
cannot say, with fair assurance, after pondering all that happened without stripping the
erroneous action from the whole, that the judgment was not substantially swayed by the
error, it is impossible to conclude that substantial rights were not affected.
10. We are referring to the following evidence: (1) Appellant's written statement, given to police
shortly after his arrest, in which he admitted shaking and hitting Jessica on the evening before the murders;
(2) Sylvia Duran's testimony that, shortly before the murders, appellant "grabbed [Jessica] in a head lock
and dragged her inside" his house; (3) Gloria Mireles' testimony that, on six or seven occasions, Jessica
appeared at her workplace with bruises, cuts, and "little red dots [on her neck] where he [appellant?] tried
to choke her"; and (4) San Antonio Police Officer Rodney Denton's testimony that, on December 16,
1994, he transported Jessica to the Bexar County Battered Women's Shelter. 
11. The evidence at trial established that appellant, in a single transaction, (1) murdered his wife, by
shooting her three times in the head at close range, in the presence of their five-year-old daughter; (2)
murdered a police officer, by shooting him four times at close range, once in the back and three times in
the head; (3) shot and wounded an adult bystander; and (4) shot at but missed two other adult bystanders. 
The evidence also established that appellant (1) was "cocky" and remorseless in the hours after the
murders; (2) belonged to a violent street gang in 1992; and (3) threatened to kill a neighbor in 2000.